O'CAIN v. O'CAIN.

1. TRUST.—When a trust is imposed on two persons by deed, which is not known to one, who afterwards accepts from grantor another deed under which she carries out the first trust, it is useless to resurrect the first deed for the purposes of that trust.

2. EQUITY—TRUSTS—REMEDIES.—The Court of Equity will not entertain a case seeking the construction of a trust deed upon contingencies that have not and may never happen.

3. IBID.—IBID.—IBID.—TRUSTEE—CESTUI QUE TRUST.—The plaintiff trustee is in no position to have his interests protected by equity under the guise of protecting the interests of his *cestui que trustent*, which he has shamefully neglected for more than twenty years, and who are not now complaining.

4. REGISTRATION—PURCHASER FOR VALUE.—Notice to supply the place of registration must be full, explicit, and clearly proved. No such notice in this case, and the purchase held to be for value without notice.

5. TRUST DEED.—Doubted if trust deed was ever executed, or whether it was not intended to be used only in an emergency.

Before WITHERSPOON, J., Orangeburg, April, 1897. Affirmed.

Action by Watson A. O'Cain against Julia O'Cain and her children. Judgment for defendant. Plaintiff appeals on following exceptions:

1. Because his Honor erred in holding that the plaintiff is not entitled to the relief which he seeks, by reason of the fact that he "is seeking the aid of the Court of Equity for his individual benefit by the enforcement of the trust deed that he procured his brother to execute for the purpose of avoiding the payment of his debts."

2. Because his Honor erred in finding as matter of fact (1) that the plaintiff had violated the terms of the trust deed, and also induced his wife to violate said deed, by conveying the trust property to pay his individual debt to Rickenbacker; (2) that the plaintiff had utterly disregarded the trust deed for more than twenty years, and only placed the same upon record after finding that the lapse of time had cancelled his other debts; and (3) that the plaintiff is asking the Court of Equity to aid him personally in taking advantage of his own wrong; and in concluding that, under these circumstances, the plaintiff is not entitled to the relief which he seeks.

3. Because his Honor erred in holding that the plaintiff's complaint, seeking relief for his individual benefit, should be dismissed under the doctrine of estoppel.

4. Because his Honor erred in holding that plaintiff induced John O'Cain to execute to Julia O'Cain the title to the trust lands now in dispute, and that after so doing he should not now, for his personal benefit, be permitted to question such title; whereas the Circuit Judge should have held that the deed of John A. O'Cain to Julia O'Cain, attached to the complaint and marked exhibit "B," conveyed other lands than those included in the trust deed, and was only intended to convey the lands therein mentioned not included in the trust deed, and in fact did not pass to Julia O'Cain any interest whatsoever in the lands previously conveyed by John A. O'Cain to Watson A. O'Cain and Julia O'Cain in trust.

5. Because his Honor erred in holding that the plaintiff, by reason of the proceedings in the action of Mary W. O'Cain and Frances E. O'Cain against Annie B. O'Cain, Julia A. O'Cain and Watson A. O'Cain, for partition of the lands conveyed by Julia O'Cain to her daughters, Mary W., Frances E., and Annie B. O'Cain, "is not entitled to the relief which he seeks in this action."

6. Because his Honor erred in ordering that the receiver appointed and put in possession of the forty acres of land

referred to in the complaint herein, deliver possession of
same to the defendant, Julia O'Cain.

*Messrs. Izlar Bros.*, for appellant, cite: *Trustee must per-
form duties imposed by deed:* 28 Am. Dec., 451; 1 Bail.,
230; 1 Hill, 190. *What Court would require trustee could
do:* 5 S. C., 448.

*Messrs. Raysor & Summers*, contra. (Argument mis-
laid. Citations noted in errata.)

Feb. 22, 1898. The opinion of the Court was delivered by

Mr. Chief Justice McIver. This action was com-
menced on the 25th of October, 1895, by the plaintiff,
against Julia O'Cain, who is his wife, the other defendants
being their children, for the purposes hereinafter indicated.
It appears that the defendant, Julia, was an heir at law of
one Jenkins, and that in 1868 she and her husband, the
plaintiff, were in possession of a portion of the lands of the
estate of said Jenkins. In 1868 and 1869, the Jenkins and
other lands were offered for sale under the order of the Court,
and bought by John A. O'Cain, a brother of the plaintiff,
who received titles for the same, and executed mortgages
thereon to secure the unpaid portion of the purchase money.
The plaintiff and his said wife, however, continued in pos-
session of said lands, apparently using them as their own,
notwithstanding the fact that the title was in John A.
O'Cain, until the 30th of September, 1874, when the said
John A. O'Cain executed a deed for the same to the plaintiff
and his wife, upon certain trusts therein declared. This
deed, though executed on the day above mentioned, was
never recorded until the 17th of October, 1895, eight days
before the commencement of this action. This trust deed
seems to have been wholly disregarded both by the plain-
tiff and his wife from the time of its execution up to the
time it was recorded—a period of more than twenty-one
years, unless the conveyance of a portion of the land em.
braced in the trust deed, to one Rickenbacker, by the plain-

tiff and his wife, should be regarded as a recognition of the
trust deed.   It is stated in the Circuit decree that the deed
to Rickenbacker was executed on the 1st day of October,
*1895;* but this is manifestly either a clerical error or a mis-
print for 1875; for it is elsewhere stated in the Circuit de-
cree, that this deed was made in 1875, without giving the
day or the month; and in addition to this, the testimony of
Rickenbacker shows, very clearly, that the deed was made
in 1875; for he says that when he bought the land, the
plaintiff moved on the Jenkins land, and has been living
there "from about 1875 until the present time."   Although
this deed to Rickenbacker was offered in evidence and
marked C, it is not set out in the "Case," and we have no
other means of ascertaining its date, except from the cir-
cumstances above mentioned, and the additional fact ap-
pearing in the testimony of Rickenbacker, which will be
hereinafter more particularly noticed, that such deed was
made in the lifetime of John A. O'Cain; and as it is con-
ceded that he died in 1891, the deed could not have been
made in 1895, as erroneously stated in the Circuit decree.
Indeed, it appears that, so far from the trust deed having
been recognized during the period above stated, on the 19th
March, 1881, the said John A. O'Cain made another deed
for the same land covered by the trust deed to Mrs. Julia
O'Cain, whereby the said lands were conveyed to her ab-
solutely in fee.   This last mentioned deed was made at the
instance and request of the plaintiff himself, as the Circuit
Judge finds, and his finding is fully supported by the testi-
mony; and the same was based upon a valuable considera-
tion, to wit: the assumption by the said Julia O'Cain of
certain debts of John A. O'Cain, specified in the deed,
amounting at least to some three or four thousand dollars,
all of which have been paid "out of the proceeds of sales of
portions of the land by Julia O'Cain, which was probably
supplemented by some of the rents and income derived from
the land," as the Circuit Judge finds, which finding is sup-
ported by the testimony.   After the execution of this deed

of 1881, which was duly recorded within three days there-
after, Julia O'Cain, from time to time, sold and conveyed
portions of the lands to her sons and to third persons, and
the proceeds of such sales were applied to the payment of
the debts of her grantor, John A. O'Cain, which she had
assumed to pay. These sales were advised and encouraged
by the plaintiff, as the Circuit Judge finds, and as the testi-
mony shows. And, indeed, no claim is made by the plain-
tiff against the lands so sold; and, in fact, none could be
made, as these persons were, unquestionably, purchasers for
valuable consideration without notice of the trust deed.
Mrs. Julia O'Cain, on the 18th of February, 1893, also made
a voluntary conveyance of one hundred and forty acres of
the land to her three daughters, as tenants in common, thus
leaving only about forty acres of the land in her possession.
The testimony is conflicting as to whether the plaintiff
knew and approved of this conveyance at the time it was
made—the plaintiff testifying that he knew nothing about
it until some three or four months afterwards, while Mrs.
Julia O'Cain and her daughter both testify that plaintiff
did know of it at the time and made no objection. Be that
as it may, there is no doubt from the statement made in the
"Case," that when the action for partition of the 140 acres
amongst the three girls was commenced, the plaintiff was
made a party thereto, as a person in possession of the land;
that he "filed an answer to this complaint, in which he sim-
ply stated he did not know, and could not say, whether he
was in possession of said lands, until the lines were defi-
nitely ascertained, and he joined in the prayer for relief,
which, among other things, asked that the rights and inter-
ests of all parties in and to the said land be fixed and de-
termined by the judgment of the Court. W. A. O'Cain
made no contest and offered no proof against the rights of
the plaintiffs to a partition of the lands. The decree and
judgment of the Court was that Mary W. O'Cain, Frances
E. O'Cain, and Annie B. O'Cain were the owners of the said
lands in fee simple as tenants in common, and ordered a

partition thereof among them. Commissioners were appointed and partition made, as decreed, all of which was confirmed by the Court; Mary W. O'Cain, Frances E. O'Cain, and Annie B. O'Cain paid their share of the costs, amounting to about thirty dollars each, and immediately went into possession of their separate shares and has been in possession thereof ever since." The testimony further shows, not only that plaintiff was a party to the proceedings for partition, but was present and assisted in making it, saying: "He was glad that it was fixed that way, as the girls would have a home."

The case was referred to a referee to take and report the testimony, and upon the testimony so reported, which is set out in the "Case," as well as upon the pleadings and argument of counsel, the case was heard by his Honor, Judge Witherspoon, who rendered a decree dismissing the complaint, and directing that the receiver, who had been appointed and put in possession of the remaining forty acres of the land, pending this action, should deliver the possession thereof to the defendant, Julia O'Cain. From this judgment plaintiff appeals upon the several grounds set out in the record, which should be embraced in the report of this case. The defendant, Julia O'Cain, also gave notice of appeal from the judgment upon the ground, substantially, that the Circuit Judge erred in finding, as matter of fact, that the defendant, Julia O'Cain, had notice of the existence of the trust deed when she took title, in 1881, from John A. O'Cain; whereas he should have held that she had no such notice, and was, therefore, entitled to hold the land as a purchaser for valuable consideration without notice. Although styled a notice of appeal, it seems to us that, properly speaking, it is rather a notice that the defendant will ask this Court to affirm the decree of the Circuit Judge upon the grounds, other than those upon which he rested his conclusion, and we propose so to consider it.

The Circuit Judge rested his conclusion upon the ground that, in his judgment, the plaintiff was really seeking the

aid of the Court of Equity for his own individual benefit, and that in view of his conduct, in violating the terms of the trust deed, and inducing his wife to join with him in such violation, by conveying a portion of the trust property to Rickenbacker in payment of his individual debt— in utterly disregarding the trust deed for more than twenty years, only placing the same on record after being advised by counsel that his own debts had been extinguished by lapse of time—and in otherwise disregarding his duties as trustee for such a lapse of time, he is now asking the Court of Equity to aid him, personally, in taking advantage of his own wrong—and this a Court of Equity will not due. He also held that the plaintiff was estopped, especially as to his claim to bring back under the operation of the trust deed, the lands which have been conveyed to his daughters, by a voluntary deed, by his conduct as a party to the action for the partition of said lands, as hereinabove narrated. It is very obvious that the conclusion adopted by the Circuit Judge is based largely, if not entirely, upon the view that the plaintiff, who claims to be one of the beneficiaries under the trust deed, has really and truly brought this action in his own individual interests, and not with a view to the protection of the rights of the other beneficiaries under the said deed. And we think the pleadings and the testimony fully justify the Circuit Judge in the view which he has taken. Without undertaking to set out fully the trusts declared in the trust deed, it is sufficient to state here that they are, "*first* to apply the income and the profits arising from the above mentioned premises to the payment and satisfaction of the balance of the purchase money due and owing for the lands aforesaid; and *then* in trust to hold the said premises, and apply the income, profits and interest arising therefrom to the joint use, maintenance and support of them, the said Watson A. O'Cain and Julia O'Cain, and to and for the use, maintenance and support and education of the children of them, the said Watson A. and Julia O'Cain, &c." It is very cer-

tain, from the testimony, that the first trust has been fully performed—*not*, however, by the trustees named in the deed, but by the defendant, Julia O'Cain, who disclaims any knowledge of the trust deed, under the absolute deed to her in March, 1881; and, therefore, there is now no necessity for resurrecting the old trust deed, which has lain buried so many years, for the purpose of securing the performance of a trust which has already been performed.

So far as the trust next declared, for the support and maintainance of plaintiff and his wife and their children, is concerned, it does not appear that any of the beneficiaries under that trust, except the plaintiff, are making any complaint as to the present status of affairs, or invoking any aid from the Court of Equity. They are all parties to this case, and appear to be *sui juris*. Besides, the true object of this action is disclosed by the ninth paragraph of the complaint: "That the plaintiff has no other means of support save his interest in the income and profits derived from these lands, which, he is advised, he is justly and legally entitled to under the trust contained in the deed"—referring to the trust deed. It is true, that the plaintiff, in his complaint, does demand judgment: "1. That the Court construe the said trust deed, and fix and determine the rights and interests of the several respective parties thereunder." But there is no allegation in the complaint, nor any hint in the testimony, that any doubt or difficulty has arisen as to the construction of that deed; nor is there any indication as to what portion of the deed needs construction. Indeed, so far as we can perceive, its terms are plain enough and not open to any question, except, possibly, in one contingency, which has not yet arisen, and very likely never will arise; and the rule as laid down by Mr. Justice Gray, in *May* v. *May*, 167 U. S. Rep., at page 167, is: "Upon a bill in equity by a trustee for instruction in the execution of his trust, the Court will not decide questions depending upon future events, and affecting the rights of persons not in being, and unnecessary to be decided for the

present guidance of the trustee." It is clear, therefore, that the Court of Equity will not entertain the case for the purpose of determining what would be the proper construction of the terms of the deed in regard to the ulterior trusts, which depend upon contingencies which have not yet and may never occur, as contended for by counsel for the appellant in his argument.

It seems to us that the Circuit Judge was fully justified in the conclusion that the real object of this action was to promote the individual interests of the plaintiff, by resurrecting an alleged trust deed, of which, to say the very least of it, it is very doubtful if any one ever heard of before this action was commenced, and under the guise of an effort to protect the interests of his *cestui que trustent*, whose interests, he himself admits, he most shamefully neglected for a period of more than twenty years, and, in fact, destroyed to a very large extent; for he admits that he cannot now pursue the lands, which constituted much the larger part of the trust property, and which are now in the hands of purchasers for valuable consideration without notice, who have been induced to buy by his advice and encouragement—telling one of them, at least, that "the titles were sound." This being so, the further conclusion of the Circuit Judge, that the plaintiff is not in a position to invoke the aid of a Court of Equity, for the wise and salutary maxim of that Court is, that he who comes into a Court of Equity must come with clean hands; and we regret to say that the testimony in this case leaves no doubt upon our minds that the plaintiff is not in a position to claim the relief which he seeks at the hands of the Court of Equity; and for this reason the judgment below should be affirmed.

But we are also of the opinion that the judgment may, also, be sustained upon the ground taken in the notice of respondent's counsel hereinabove referred to. We do not think that the testimony is sufficient to show that the defendant, Julia O'Cain, ever had notice of the alleged trust

deed, until at or about the time when this action was commenced; and, therefore, her plea of purchaser for valuable consideration without notice, under the deed of 1881, should be sustained. The rule upon this subject, as laid down by Harper, Ch., in *City Council* v. *Page*, Speer's Eq., at page 212, is: "That to supply the want of registration, the notice must be full, explicit, and clearly proved." Now, while it is true that the plaintiff does testify positively that his wife, Julia, knew of the existence of the trust deed, he does not, *in his testimony*, say *when* she acquired such knowledge, though, in his complaint, he alleges that his wife knew of it "from the date of its execution and delivery." In his testimony he says: "The deed has been in my possession ever since it was executed and delivered to me," until he gave it to his counsel in this case. He also says that he kept the deed in his trunk, which was accessible to all of the family—that it was kept in a tin box, with his other papers, in the trunk. Again he says: "I have read the deed to my wife several times, and we have talked about it. * * * There was no attempt on my part to conceal the deed. It was exposed." The trust deed has indorsed upon it a renunciation of dower in blank—not filled up—to which the name of Jennie C. O'Cain (the wife of John A. O'Cain) appears to be signed, which, however, she testifies she did not sign; but the name of the trial justice before whom it was taken does not appear to have been signed thereto, and the date is left blank. As to this matter, the plaintiff testifies: "I know the handwriting of Mrs. Jennie O'Cain, and, in fact, saw her write her name to the renunciation of dower of [on] trust deed. She could not come in town that day because she was sick, and Mr. Gerideau felt a delicacy in going out there, and before she could come in town Mr. Gerideau had resigned as trial justice, and the dower was never completed. That was one reason the deed was not put upon record, and it was afterwards neglected." On the other hand, it is admitted that Mrs. Julia O'Cain was not present when the trust deed was executed,

and hence it could not then have been delivered to her; and she testifies positively and emphatically that she never knew or heard of the trust deed until about the time this action was commenced. She is corroborated by her daughter, Mary, who testifies that she had examined all of the papers in the tin box, in which the plaintiff says it was kept, along with his other papers, and that she never saw or heard of the trust deed. It is certainly true, and is practically admitted by the plaintiff, that none of the other members of the family had any notice of the trust deed. It is true, that Julia O'Cain, on the 1st of October, 1875, joined with her husband in executing a deed to Rickenbacker for a portion of the land, which deed, the Circuit Judge says, was signed by them as trustees, and the land is therein described as trust land; but no copy of that deed appears in the "Case," and we only know of its terms by what is said by the Circuit Judge, above stated, and by the testimony of Rickenbacker and Mrs. Julia O'Cain. It seems from the testimony, that Rickenbacker bought two pieces of land, for he says: "The first piece of land I bought, John O'Cain made the titles, and the second piece the titles were made by Mrs. Julia A. O'Cain. I never heard that Julia O'Cain was owner of the lands, or that Watson A. O'Cain was her agent, until after I bargained for the land. When I first bought the land, Watson O'Cain and Mrs. Julia O'Cain signed the titles; but afterwards I heard that the title was not good, and I came and saw Maj. Whaley, who said the titles were not worth the paper they were written on, and he made John A. O'Cain make me titles." In speaking of the signature to the deed to Rickenbacker, Mrs. Julia O'Cain says: "I wrote my own name, but did not write the word trustee to it. The word trustee was written in handwriting of W. A. O'Cain. I recognize his handwriting." Which seems to imply that the word "trustee" was appended to her name by her husband afterwards. Under this testimony we cannot agree with the Circuit Judge that Mrs. Julia O'Cain had notice of the trust deed. In the first place, the burden of the proof

is upon the plaintiff, and the rule above stated requires "that to supply the want of registration, the notice must be full, explicit, and clearly proved;" and it seems to us that the testimony relied on does not come up to the requirements of that rule. In order to reach the conclusion that Julia O'Cain had notice of the trust deed, it would be necessary to convict her, not only of perjury, but also of the grossest fraud practised upon her own children; and this, too, without any motive, so far as we can perceive. The circumstance mainly relied upon by the Circuit Judge, of her signing the deed to Rickenbacker as trustee, is explained by her testimony above stated; and, in fact, Rickenbacker does not seem to have relied upon the deed signed by the plaintiff and his wife, which he was advised was worthless, but on the title which he took from John A. O'Cain. Besides, all experience shows that a wife generally signs any paper which she is desired to sign by her husband, without really knowing or caring to understand fully its nature or purport; for it must be remembered that, at the time this deed was made, the relations between this husband and wife had not become strained or disagreeable, but were of the most amicable character. On the other hand, look at the conduct of the plaintiff. On his own showing, it appears that he induced his brother to make the trust deed for the purpose of protecting the property from the just claims of his creditors; that he carefully kept the trust deed concealed from every one except his wife, *as he says*, even from his own sons, when they were buying portions of the land, telling, at least, one of them, that "the titles were sound," when he knew his statement was false; that he encouraged his wife to incur heavy liabilities in the purchase of property, the title to which he knew was not good; that about a year after the trust deed was executed, as he says, he induced his wife to join with him in conveying a portion of the land covered by the trust deed to Rickenbacker, for the purpose of paying his own individual debt; his shallow pretense that the deed of March, 1881, was executed by John O'Cain

to Julia O'Cain, "for the purpose of conveying the remainder of the lands, which had not been conveyed in the trust deed;" for, if so, why was such deed not confined to a conveyance of such remainder, and why were the lands which he says had previously been conveyed to the trustee, then conveyed to Julia O'Cain absolutely in fee; his remarkable statement that there was no effort on his part to conceal the trust deed, when all the testimony shows conclusively that it was concealed from every one, unless it be his wife, for it certainly was concealed from Rickenbacker when he bought, and with equal certainty it was concealed from all the others who bought, even from his own sons, whom he encouraged to buy property, the titles to which, according to his version, he knew were not good, falsely telling, at least, one of them, that the titles were sound. Again, why the unaccountable delay in putting the trust deed on record for a period of more than twenty years, for his lame excuse for not recording the deed, that the renunciation of dower was not complete, tends rather to excite than to allay suspicion. These circumstances, indeed, the whole conduct of the plaintiff from the begining to the end of the various transactions above detailed, are very far from inspiring confidence in any of his statements, but rather the contrary. We are of opinion, therefore, that notice to Mrs. Julia O'Cain is very far from being "clearly proved," and hence she should be regarded as a purchaser for valuable consideration without notice, when she bought the property in question from John A. O'Cain, in March, 1881, and when she paid the purchase money thereof by satisfying the debts of John A. O'Cain, mentioned in the deed of that date as the consideration thereof. For this reason, therefore, in addition to the reasons assigned by the Circuit Judge, the judgment below should be affirmed.

Indeed, there are circumstances in this case which are well calculated to raise grave doubt whether the alleged trust deed was ever fully executed so as to pass the title to the lands embraced therein, or whether it was not intended to

be used only in any emergency that might arise, for the purpose of protecting the property from the claims of the creditors of the plaintiff, if they should make any effort to subject the same to the payment of their debts. The renunciation of dower on that deed was never executed, and the excuse given by the plaintiff why it was not executed is far from satisfactory. For there is no evidence that Mr. Gerideau was the only officer accessible competent to take the renunciation. Although the name of the wife of the grantor appears to have been signed to the renunciation, she denies that she signed it—the fact that the deed was not put upon record for such a great length of time, after the lips of the alleged grantor had been sealed by death—after the plaintiff had been advised by counsel that, by reason of lapse of time, he had nothing to fear from his creditors—and after the separation of husband and wife—again, the undisputed fact that the alleged grantor, John A. O'Cain, conveyed a portion of the land embraced in the alleged trust deed to Rickenbacker, just about a year after the date of such deed, and again in March, 1881, conveyed all of the land covered by the trust deed, *for a valuable consideration*, to Mrs. Julia O'Cain by an absolute deed—are difficult, if not impossible, to be accounted for upon any other theory, consistent with the honesty of John A. O'Cain, whose character has not been impugned, than that he knew that the title did not, and was not intended to, pass by the alleged trust deed.

It seems to us, therefore, that the action of the plaintiff cannot, in any view of the case, be maintained.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.